**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **HOAI THANH** | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | Civil No. **PJM 11-1992** |
| | * | |
| **HIEN T. NGO** | * | |
| | * | |
| Defendant | * | |
| | * | |

**<u>OPINION</u>**

Hoai Thanh ("Thanh") has sued Hien T. Ngo ("Ngo") for (1) false light invasion of privacy, (2) defamation, and (3) malicious prosecution. Ngo has filed a Motion for Summary Judgment as to all counts, which Thanh opposes. Although the Court previously granted Ngo's Motion for Summary Judgment with respect to the malicious prosecution claim, Thanh filed a Motion to Alter or Amend the Court's Judgment dismissing that claim, which the Court denied by marginal order. Thanh filed two Motions for Spoliation Sanctions against Ngo, which the Court also denied by marginal order.

For the reasons that follow, the Court **REAFFIRMS** its rulings as to Thanh's malicious prosecution claim and his motions for spoliation sanctions. It **GRANTS** Ngo's Motion for Summary Judgment, ECF No. 93, as to all of Thanh's remaining claims and **ENTERS** final judgment in favor of Ngo and against Thanh.

**A.**

This case is the latest battle in a protracted war of litigation between Thanh and Ngo.[1]

---

[1] This is at least the seventh action that the parties have brought against each other since 2001. *See Hung Ngoc Ngo et al. v. Dai Chung News Media, Inc., et al.*, Civ. No. 224653 (Cir. Ct.

The present strife began in October 2008, when Thanh sued Ngo, Ngo's brother Hung

Ngoc Ngo, Vietnamese Public Radio, Inc. ("VPR"), and the Committee for Religious Freedom

in Vietnam, Inc. ("CRFV") in the Circuit Court for Montgomery County. Ngo then filed a

bankruptcy action in this District, which stayed all pending claims as to her, following which

Thanh filed his claim against Ngo in the bankruptcy proceeding, was granted a lift-stay, and

pursued his action in this Court.

In his Complaint, ECF No. 10, Thanh alleges that on her radio show on VPR, Ngo

solicited money for various charitable causes purportedly intended to help individuals in

Vietnam.  Although Ngo claimed that almost all of the money raised actually went to such

causes, according to Thanh's Complaint, Ngo and others in fact diverted most of the funds they

solicited for their own use. Thanh, who ran a local Vietnamese-language newspaper, *Dai Chung*,

in Montgomery County, Maryland, published accusations against Ngo to that effect in his paper.

According to the Complaint, Ngo responded by attacking Thanh on multiple fronts—

defaming him, casting him in a false light, intimidating him, filing "baseless" lawsuits against

him, and stirring up threats of violence against him within the Vietnamese-American community

in twenty-two states.  In her VPR broadcasts, says Thanh, Ngo and/or her allies have variously

branded Thanh a "communist," a con artist, and a crook.  During one broadcast, the speaker (not

identified as Ngo) supposedly claimed that there was a communist flag in Thanh's newspaper,

---

Montgomery Cty. Aug. 30, 2001); *Hung Ngoc Ngo et al. v. Dai Chung News Media, Inc., et al.*,
Civ. No.  235988 (Cir. Ct. Montgomery Cty. Sept. 6, 2002); *Hung Ngoc Ngo et al. v. Dai Chung
News Media, Inc., et al.*, Civ. No. 240210 (Cir. Ct. Montgomery Cty. Feb. 19, 2003); *Hung Ngoc
Ngo et al. v. Dai Chung News Media, Inc., et al.*, Civ. No. 242835 (Cir. Ct. Montgomery Cty.
May 29, 2003); *Hien Ngo v. Thanh Hoai*, Civ. No. GV05008447-00 (Gen. Dist. Ct. Alexandria
December 15, 2005); *Dai Chung News Media Inc., et al v. Hien Thi Ngo, et al.*, Civ. No. 04-
RWT-04033 (D. Md. Dec. 21, 2005); *Dai Chung News Media, Inc., et al v. Hien Thi Ngo, et al.*,
Civ. No. 05-AW-03420 (D. Md. Dec. 22, 2005); *Hoai Thanh v. Hien Thi Ngo, et al.*, Civ. No.
302128 (Cir. Ct. Montgomery Cty. Oct. 8, 2008).

*Dai Chung*.  Compl. ¶ 38, ECF No. 10. [2] During another broadcast, letters were allegedly read aloud to the effect that Thanh had swindled several Vietnamese small business owners.  Compl. ¶ 71, ECF No. 10. Thanh further claims that Ngo and her allies maliciously filed baseless defamation suits against him.

As a result of Ngo's "tortious conspiracy," Thanh avers that his newspaper lost readership and advertisers and that his auto businesses in Maryland and Virginia suffered financially.  Thanh also reports having received threats, including finding a skeleton at the front door of his auto business. He seeks compensatory and punitive damages and injunctive relief.

Thanh bases his claims against Ngo on three state law causes of action: I) false light invasion of privacy; II) defamation; and III) malicious prosecution. He also seeks a declaration by the Court that Ngo not be able to discharge in bankruptcy any damages that might be awarded to him in this case.

## B.

Thanh filed his Complaint against Ngo in the United States Bankruptcy Court for the District of Maryland on March 25, 2011. ECF No. 1-4, at 5. Following the lift-stay, this Court withdrew the case from the Bankruptcy Court on October 7, 2011. ECF No. 8. Since then, the case has crept along at a snail's pace, always accompanied by a constant drip of acrimony. In late 2013, the Court imposed a deadline for the filing of dispositive motions. Within that timeline, Ngo filed a Motion for Summary Judgment, and Thanh subsequently filed a Motion to Amend his Complaint.

In January 2014, the Court held a hearing on both Motions, most of which concerned statute of limitations issues.  The Court granted Ngo's Motion for Summary Judgment as to

---

[2] According to Thanh, given the Vietnamese-American community's reported dislike of the communist regime in Vietnam, accusing him of being a communist was personally devastating. Thanh says that he in fact fought against the communists as an agent for U.S. intelligence. `

several claims based on limitations grounds, leaving only a few claims in the case, which will be discussed presently. Despite the unfortunate miasma created by the pleadings, it became clear to the Court that the major issues in the case would be i) whether Thanh in fact had any evidence that Ngo was the actual speaker of the allegedly defamatory broadcasts and/or ii) whether Thanh had any evidence that Ngo directed others to make such statements in those broadcasts. The Court reminded counsel for Thanh that, as Plaintiff, it was his burden to adduce evidence from which a trier of fact could find that Ngo was the speaker of the statements or was otherwise in some way responsible for them. Accordingly, the Court deferred ruling on Ngo's Motion for Summary Judgment with respect to any and all publications that did not otherwise go out on limitations grounds. *See* ECF No. 105, at 1. On May 28, 2014, after additional submissions by counsel, the Court heard renewed argument on Ngo's Motion for Summary Judgment, and eventually granted summary judgment in favor of Ngo with respect to Thanh's malicious prosecution claim. ECF No. 121. The balance of the hearing dealt with the interrelated claims of defamation and false light invasion of privacy, which are the principal subject of the present Opinion.

## C.

The Court begins with Thanh's Motion to Alter or Amend the Court's grant of Summary Judgment with respect to his malicious prosecution claim. ECF No. 126. The Court granted Ngo summary judgment on the malicious prosecution claim via an oral ruling on the record, ECF No. 121, and on March 30, 2015, by marginal order, denied the Motion to Alter or Amend the Judgment. ECF No. 145.

To re-visit the elements of Thanh's "malicious prosecution" claim:

"Despite the similarity in language, '[a]buse of process, malicious use of process, and malicious prosecution are essentially different and independent torts.'" *One Thousand Fleet Ltd. P'ship v. Guerriero*, 346 Md. 29, 36 (1997) (citing R. Gilbert & P. Gilbert, Maryland Tort Law Handbook § 5.3, at 54 (1992)). In Maryland, the term "malicious use of process" means malicious prosecution of a civil claim. *Id.* "Malicious prosecution" in Maryland applies to criminal charges, but otherwise shares the same elements as malicious use of process. *Id.* Since Thanh seeks redress for a civil claim against him, the Court construes his malicious prosecution claim as more properly a claim for malicious use of process.

The cause of action for malicious use of process has five elements, all of which must co-exist to maintain the action. First, a prior civil proceeding must have been instituted by the defendant. Second, the proceeding must have been instituted without probable cause. Third, the prior civil proceeding must have been instituted by the defendant with malice, which in the context of malicious use of process means that the party instituting proceedings was actuated by an improper motive. As a matter of proof, malice may be inferred from a lack of probable cause. Fourth, the proceedings must have terminated in favor of the plaintiff. Finally, the plaintiff must establish that damages were inflicted upon the plaintiff by arrest or imprisonment, by seizure of property, or other special injury which would not necessarily result in all suits prosecuted to recover for a like cause of action. *See Guerriero*, 346 Md. at 37.

Involuntary dismissal of the original suit, as on a motion for summary judgment, does not *ipso facto* constitute evidence of want of probable cause in a subsequent malicious use of process suit. To show lack of probable cause, the plaintiff must also show that the defendant did not have a reasonable belief in the plaintiff's liability. *See Guerriero*, 346 Md. at 37.

Accordingly, while the granting of summary judgment on the merits unquestionably represents a termination favorable to the party subsequently suing for malicious use of process, *see Sierra Club Found. v. Graham*, 72 Cal. App. 4th 1135, 1149 (1999), mere proof of a favorable termination does not automatically equate with lack of probable cause or the presence of malice.  As the California Supreme Court held in *Sheldon Appel Co. v. Albert & Oliker*, a case involving malicious prosecution of a civil action,[3]

> the probable cause element calls on the trial court to make an objective determination of the "reasonableness" of the defendant's conduct, *i.e.*, to determine whether, on the basis of the facts known to the defendant, the institution of the prior action was legally tenable. The resolution of that question of law calls for the application of an *objective* standard to the facts on which the defendant acted.

47 Cal. 3d 863, 878 (1989).

The California Supreme Court goes on to say that the test for probable cause in malicious prosecution cases is "whether any reasonable attorney would have thought the claim tenable." *See id.* at 886. This test reflects the important public policy of avoiding the chilling of novel or debatable legal claims.  Lack of probable cause cannot be found where reasonable minds could differ as to the tenability of the original claim. The Court finds Maryland law to be in accord. *See, e.g.*, *Guerriero*, 346 Md. at 37 (defining probable cause for purposes of malicious use of process as a reasonable ground for belief in the existence of such state of facts as would warrant institution of the suit or proceeding complained of).

It is true that Ngo played an active role in suing Thanh for defamation.[4]  But the jugular question is whether Ngo's grounds for suing Thanh for defamation were "legally untenable" or

---

[3] At the time that the California Supreme Court issued *Sheldon Appel Co.*, the term "malicious prosecution" applied to both civil and criminal actions.

[4] *Hung Ngoc Ngo et al. v Dai Chung Biweekly Magazine, et al.*, Civ. No. 224653 (Cir. Ct. Montgomery Cty., Md. Sept. 24, 2003) (partial transcript available at ECF No. 137-1).

that she pursued the case with an improper motive.  Thanh has adduced no evidence to either effect.

The gist of Ngo's defamation action was that Thanh had defamed her by writing in his newspaper that she was inappropriately converting monies that she had solicited for charitable purposes to her personal use.

Given the parties' long history of mutual animosity, it was certainly fairly debatable that Thanh had acted recklessly and even possibly with malice when his newspaper essentially characterized Ngo's radio solicitations as corrupt.  In other words, embracing the test as articulated by the California Supreme Court, it was "legally tenable" for Ngo to file her defamation suit against Thanh, even if Judge Woodward of the Montgomery County Circuit Court ultimately held on summary judgment that a jury could not conclude by clear and convincing evidence that Thanh had acted with malice vis-à-vis Ngo. For these reasons, as well as for the reasons stated on the record at the May 28, 2014 hearing, the Court granted summary judgment to Ngo with respect to Thanh's malicious prosecution claim (again, which is more properly styled a claim for "malicious use of process"). ECF No. 121.

To be sure, in his Motion to Alter or Amend the Court's grant of summary judgment on his malicious use of process claim here, ECF No. 126, and in a subsequent Reply memorandum, ECF No. 128, Thanh advanced two arguments. First, he argued that *Havilah Real Prop. Servs., LLC v. Early*, a recent decision of the Maryland Court of Special Appeals, contains a rule of law that this Court failed to heed in its earlier oral ruling. He says that, per *Havilah*, the dismissal of Ngo's original suit against him based on his motion for summary judgment, establishes a rebuttable presumption for purposes of his present malicious use of process claim: *i.e.*, Ngo must be presumed to have lacked probable cause and to have acted with actual malice in bringing the

defamation suit against him. *See* Pl's Br., ECF No. 126-1, at 4 (citing 216 Md. App. 613 (2014)). Thanh submits that Ngo has failed to rebut this presumption in the present case.

The Court does not read *Havilah* to stand for the propositions Thanh floats, and finds no Maryland law that otherwise supports them. *Havilah* held that the <u>denial</u> of a motion for summary judgment establishes a rebuttable presumption that there <u>was</u> probable cause to sue, thus barring a subsequent malicious use of process suit. *See* 216 Md. App. at 632. This does not mean that the converse is necessarily true; *e.g.*, that <u>the grant of</u> a motion for summary judgment establishes a rebuttable presumption that there <u>was not</u> probable cause to sue. As just noted, the proper test for lack of probable cause for the Court (not the jury) to consider is whether Ngo's defamation suit was legally tenable. And, as the Court has just concluded, it was.

Thanh also argues that the actual malice standard articulated in *New York Times v. Sullivan* and its progeny "means that from the outset the plaintiffs [ . . . ] were required to know that they could show actual malice before filing suit." *See* Pl.'s Reply Br., ECF No. 138, at 9. Thanh argues that Judge Woodward, in granting Thanh's motion for summary judgment against Ngo, established that in her previous suit against Thanh for defamation Ngo "had absolutely no reasonable basis to believe that they could show malice on the part of the plaintiff." *See id.*

Thanh cites no caselaw for this proposition and Judge Woodward held no such thing. He held only that there was insufficient evidence for a jury to conclude by clear and convincing evidence that there was actual malice on the part of Thanh. *See* Def.'s Ex. 1, ECF No. 137-1, at 14-15. Judge Woodward did not find, as Thanh would have it, that Ngo "had absolutely no reasonable basis to believe that [she] could show malice on the part of [Thanh]," let alone that Ngo in fact had no such reasonable basis before she filed suit.

Thanh has not established a genuine issue of material fact that Ngo lacked probable cause or acted with malice in suing him for defamation. Accordingly, the Court reaffirms its earlier oral ruling of summary judgment in favor of Ngo on Thanh's malicious prosecution claim, ECF No. 121, and re-affirms its marginal order denying Thanh's Motion to Alter or Amend the Court's Judgment as to that cause of action.

**D.**

The Court turns to the remaining aspects of Ngo's Motion for Summary Judgment.

**1)**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine dispute is one where the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012). A material fact is one "that might affect the outcome of the suit under governing law." *Erwin v. United States*, 591 F.3d 313, 320 (4th Cir. 2010) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When assessing a motion for summary judgment, the court views the record in the light most favorable to the nonmoving party and draws all reasonable inferences in his or her favor. *Dulaney*, 673 F.3d at 330. A nonmoving party may not, however, defeat summary judgment by making assertions lacking sufficient factual support or by relying on a mere "scintilla of evidence." *Am. Arms Int'l v. Herbert*, 563 F.3d 78, 82 (4th Cir. 2009). A party opposing a properly supported motion for summary judgment bears the burden of establishing a genuine issue of material fact on each essential element of its case. *Anderson*, 477 U.S. at 248-49; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party opposing summary judgment "'may not rest upon the mere

allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003).

**2)**

Ngo argues for summary judgment as to some of the allegedly defamatory radio broadcasts because they have never been properly pleaded or are time-barred under applicable statute of limitations. The Court agrees.

Every alleged defamatory statement constitutes a separate instance of defamation, which a plaintiff must specifically allege. *Gainsburg v. Steben & Co.*, 838 F. Supp. 2d 339, 344 (D. Md. 2011) (citing *English Boiler & Tube, Inc. v. W.C. Rouse & Son, Inc.*, 172 F.3d 862 (4th Cir. 1999), *aff'd*, 519 F. App'x 199 (4th Cir. 2013)). The applicable limitations period for a defamation claim is one year. Md. Code, Cts. & Jud. Proc. Art., § 5-105. The Maryland Court of Special Appeals has held that the applicable limitations period for a false light claim is three years. *See Allen v. Bethlehem Steel Corp.*, 76 Md. App. 642, 649 (1988) (construing Md. Code Ann., Cts. & Jud. Proc. § 5-101).

Thanh's Complaint alleges that on September 2, 2004, Ngo broadcast several defamatory statements—essentially suggesting that Thanh had defrauded various Vietnamese American business people. ECF No. 10 ¶ 37. The Complaint alleges that Ngo repeated this September 2, 2004 broadcast:

- "[O]n or about December 23, 2004[.]" ECF No. 10 ¶ 68.

- "[D]uring the Christmas holiday seasons of 2004 and 2005[.]" ECF No. 10 ¶ 68.

- "[O]n or around December 23, 2005[.]" ECF No. 10 ¶ 37

- "[A]gain several times in January of 2006." ECF No. 10 ¶ 54.

- "[E]ven in the beginning of 2006." ECF No. 10 ¶ 68.

- "[A]gain several times after Christmas in the year 2006[.]" ECF No. 10 ¶ 37.

In addition to the original September 2, 2004 broadcast, the Complaint alleged a wrongful broadcast by Ngo on October 6, 2001 said to give rise to claims of defamation and false light. ECF No. 10 ¶ 34.

The Court will accept that Thanh effectively filed the claims that constitute the present suit on October 8, 2008, when he sued Ngo in Montgomery County Circuit Court. Even so, many of Thanh's claims are untimely unless the relevant statute of limitations was tolled.

During the January 13, 2014 motions hearing, the Court held that 28 U.S.C. § 1367 tolled claims asserted in the present case that were also properly asserted in two prior cases that Thanh brought in federal court: *Dai Chung News Media Inc., et al. v. Ngo, et al.*, 04-RWT-4033 (D. Md. Dec. 27, 2004) ("*Dai Chung I*") and *Dai Chung News Media, Inc., et al v. Ngo, et al.*, 05-AW-3420 (D. Md. Dec. 22, 2005) ("*Dai Chung II*").

Thanh filed *Dai Chung I* on December 27, 2004, in which he asserted the following causes of action:

- Claims for violation of the RICO statute for mail fraud, wire fraud, and interference with commerce, the only federal causes of action claimed

- Malicious prosecution, and conspiracy to maliciously prosecute

- Defamation and False Light Invasion of Privacy as to broadcasts originally occurring on October 6, 2001 and September 2, 2004

- Conspiracy to defame and conspiracy to commit false light invasion of privacy

*Dai Chung I* was voluntarily dismissed on August 25, 2005, as a result of which, based on this Court's reading of 28 U.S.C. § 1367(d), limitations were tolled until September 24, 2005

(30 days following August 25, 2005), meaning that none of the time between December 27, 2004 and September 24, 2005 counted against limitations for either defamation or false light purposes.

Thanh filed *Dai Chung II* on December 22, 2005, only three months after September 24, 2005. In *Dai Chung II*, Thanh asserted the same causes of action as he had in *Dai Chung I*, including the aforementioned defamatory and false light broadcasts originally occurring on October 6, 2001, September 2, 2004, and added defamation and false light claims for broadcasts occurring on December 23, 2004 and January of 2005.

In March 2007, Judge Williams dismissed Thanh's federal RICO claims, and declined supplemental jurisdiction over Thanh's pendent state law claims. Thanh appealed to the Fourth Circuit, which affirmed the dismissal. On January 29, 2008, the mandate of the Fourth Circuit issued. On February 15, 2008, Thanh filed a Motion to Recall the Mandate. On April 22, 2008, the Fourth Circuit denied this Motion. Thanh argued before this Court that *Dai Chung II* was "pending" under 28 U.S.C. § 1367(d) up until the time the Fourth Circuit denied his Motion to Recall the Mandate on April 22, 2008. Ngo argued that *Dai Chung II* was only pending until the Fourth Circuit issued its mandate on January 29, 2008. Presented with scant authority for either position, the Court, in its discretion, found that *Dai Chung II* was pending until the Fourth Circuit denied Thanh's Motion to Recall the Mandate on April 22, 2008. Accordingly, per 28 U.S.C. § 1367(d), the claims asserted in *Dai Chung II* were deemed tolled from December 22, 2005 until May 22, 2008 (30 days after April 22, 2008).

The Court, then, considers which of Thanh's defamation/false light claims were imported into the October 8, 2008 filing in state court, which are able to withstand summary judgment on limitations grounds and which are not. As the Court now explains, at least some broadcasts (or more precisely some re-broadcasts of the original September 2, 2004 broadcast) occurred more

than one year and/or more than three years prior to October 8, 2008, which is to say, they fall outside the limitations periods for both defamation and false light purposes, and are time barred.

Taking the alleged broadcasts in chronological order:

### i.   October 6, 2001 – ECF No. 10 ¶ 34

The Complaint in *Dai Chung I* alleged a wrongful broadcast on October 6, 2001 said to give rise to claims of defamation and false light. This claim was asserted in both *Dai Chung I* and *Dai Chung II*.

But this claim, alleging that Ngo had broadcast that Thanh had a communist flag in his newspaper, is untimely as to both defamation or false light claims because, without regard to tolling, it occurred more than one year and more than three years prior to *Dai Chung I*, filed December 27, 2004, and obviously more than one year and more than three years prior to *Dai Chung II*, filed December 22, 2005. It is therefore out of the case.

### ii.   September 2, 2004 – ECF No. 10 ¶ 37

Thanh asserted the September 2, 2004 claim in both *Dai Chung I* and *Dai Chung II*. A period of 116 days elapsed between the September 2, 2004 broadcast and the December 27, 2004 filing of *Dai Chung I*. The statute of limitations was tolled during *Dai Chung I*. A period of 89 days elapsed between September 24, 2005, the end of the tolling period in *Dai Chung I*, to the December 22, 2005 filing of *Dai Chung II*. The statute of limitations was tolled during *Dai Chung II*. A period of 140 days elapsed between May 22, 2008, the end of the tolling period in *Dai Chung II*, and the October 8, 2008 filing of the complaint in the Montgomery Circuit Court that became the instant case. Accordingly, once the tolling periods are taken out of the equation, Thanh filed the instant claim 345 days after the September 2, 2004 broadcast, which are within the limitations period for both defamation and false light. So far, so good.

### iii.    "[O]n or around December 23, 2004[.]" – ECF No. 10 ¶ 68

The Complaint in *Dai Chung I* did not plead any claims regarding an alleged broadcast on December 23, 2004. On the other hand, the Complaint in *Dai Chung II*, filed on December 22, 2005, did plead defamation and false light claims as to an alleged broadcast on December 23, 2004. Accordingly, the statute of limitations as to the December 23, 2004 broadcast was tolled throughout the *Dai Chung II* proceedings, and for thirty days thereafter. Tolling ended on May 22, 2008. Thanh filed the complaint upon which this action is based in the Circuit Court for Montgomery County on October 8, 2008, a period of 139 days later. As a result, after taking the tolling periods out of the equation, Thanh filed the instant defamation and false light claims 504 days after the December 23, 2004 broadcast, which exceed the one year statute of limitations for a defamation claim, but fall within the three year statute of limitations for a false light invasion of privacy claim. Accordingly, Thanh's December 23, 2004 defamation claim is out of the case. To this point, at least, Thanh's December 23, 2004 false light invasion of privacy claim remains in the case.

### iv.    "[D]uring the Christmas holiday seasons of 2004 and 2005[.]"– ECF No. 10 ¶ 68

These claims go out for multiple reasons.  First, they were not part of and therefore not tolled by reason of *Dai Chung I*.  Second, the holiday season of 2004 could well refer to a date more than one year before December 22, 2005, the date *Dai Chung II* was filed, which would be fatal to any defamation claim.  Third, as to both the defamation and false light claims, the dates are hopelessly and fatally vague and cannot fairly be put before a jury to speculate on how many multiple recoveries might be awarded to Thanh.

v.    **"[O]n or around December 23, 2005[.]" – ECF No. 10 ¶ 37**

Neither the Complaint in *Dai Chung I* nor the Complaint or Amended Complaint in *Dai Chung II* pleads any claims related to a December 23, 2005 broadcast.[5] Accordingly, no tolling is applicable to Thanh's December 23, 2005 defamation and false light claims. Thanh filed his defamation and false light claims as to the December 23, 2005 broadcast on October 8, 2008, just over two years and nine months after the broadcast. Because this period exceeded the one year statute of limitations for defamation claims, Thanh's December 23, 2005 defamation claim must go out of the case. Again, to this point, at least, Thanh's December 23, 2005 false light claim remains in the case.

vi.    **"[A]gain several times in January of 2006." – ECF No. 10 ¶ 68**

      **"[E]ven in the beginning of 2006." – ECF No. 10 ¶ 68**

Presumably these allegations refer to the same incidents, but they are fatally flawed in any case.  Since these dates appeared for the first time in the present suit, they clearly refer to incidents occurring more than one year prior to October 8, 2008. But because they are hopelessly unspecific, they cannot fairly raise a genuine issue of material fact as to specific acts of defamation or false light, each of which must be separately pleaded and each of which would support separate recoveries against Ngo. The defamation and false light claims in this timeframe are also out of the case.

vii.    **"[A]gain several times after Christmas in the year 2006[.]" – ECF No. 10 ¶ 37**

All claims within this period go out for the same reasons that the claims referred to in the

---

[5] The Complaint in *Dai Chung II* does make reference to a December 23, 2005 broadcast. *See* Compl. ECF No. 1, at 22-23, *Dai Chung II*, 05-AW-03420 (D.Md. Dec. 22, 2005). This is clearly a typographical error, as the Complaint itself was filed one day before the alleged December 23, 2005 broadcast could have been made. Indeed, in the analogous portion of the Amended Complaint in *Dai Chung II*, Thanh appears to have removed reference to a December 23, 2005 broadcast. In its place is a reference to a December 23, 2004 broadcast. *See* Amended Compl., ECF No. 47, at 22, *Dai Chung II*, 05-AW-03420 (D.Md. Oct. 13, 2006).

paragraph next above go out – as to defamation, they occurred more than one year period before October 8, 2008, and they are otherwise fatally lacking in specificity.

**3)**

Thanh has, at various points, argued there are certain other broadcast dates not specifically alleged in his Complaint that nonetheless should be added to this case. The Court disagrees.

Pursuant to the Court's January 14, 2014 Order, Thanh was directed to produce recordings of <u>any and all</u> radio broadcasts made on and since September 2, 2004 that he contended comprise his defamation and false light claims in this suit. The recordings he submitted included broadcasts dated December 6, 2005, December 11, 2005, and December 10, 2006, none of which dates are alleged in the Complaint. Thanh argues, however, that the December 6, 2005, December 11, 2005, and December 10, 2006 broadcast dates are "covered in the present lawsuit" because the Complaint and his answers to interrogatories give fair notice of these dates. *See* Pl.'s Br., ECF No. 109, at 5-6. He points out that the Complaint states that the defamatory broadcasts were repeated during the "Christmas holiday seasons of 2004 and 2005 and again in 2006," Compl. ¶ 68, ECF No. 10, and were "repeated on or about December 23 2004 and again at Christmas time in 2005 and again in 2006." Compl. ¶ 72, ECF No. 10. In his answer to Interrogatory 7, Thanh states that "[i]n addition to the specific dates of the broadcast set out in the [C]omplaint, there were additional broadcasts in the form of rebroadcasts of the same show by the [D]efendant on December 11, 2005 and again on December 10, 2006." ECF No. 107-2, at 2.

Ngo, for her part, maintains that these three latter dates (as well as other alleged broadcast dates that Thanh has asserted at various points) are not specifically alleged in the

Complaint and therefore should not be allowed in this lawsuit. *See* ECF No. 107. In particular, Ngo argues that Thanh's general references to the Christmas holiday seasons are not refined enough to give her fair notice of the claim. Finally, Ngo argues that Thanh never successfully amended his Complaint to add such dates as independent causes of action.

Arguments about fair notice aside, the Court observes that Thanh has suggested that he did not learn of the December 6, 2005, December 11, 2005, or December 10, 2006 broadcasts until after filing his Complaint and then only through discovery requests propounded upon Ngo. The Court is highly skeptical of this excuse. Rather, as Thanh himself admits in a sworn affidavit, he himself recorded the December 11, 2005 and December 10, 2006 broadcasts, and he himself obtained the cassette of the December 6, 2005 broadcast from Giap Phuc Toan, an employee of VPR. ECF No. 136, at 1; *see also* ECF No. 37-1, at 1-2 (stating that as of February 2012, Thanh had December 11, 2005 and December 10, 2006 broadcast tapes in his possession). The Court fails to comprehend why Thanh was unable to plead these three dates with specificity in his original Complaint, let alone why he failed to move to amend the Complaint to add these dates prior to November 2013.[6] As a result, the Court holds that the December 6, 2005,

---

[6] The Motion to Amend the Complaint, filed on November 27, 2013, would have added rebroadcasts of the September 2, 2004 show, on September 7, 2004, December 11, 2005, April 6, 2006, December 6, 2006, and December 10, 2006. ECF No. 96-1, at 12. By Order dated February 15, 2012, the Court had allowed that Thanh would be able to amend his Complaint based on information obtained through discovery. ECF No. 38. The discovery deadline was originally May 3, 2012. ECF No. 27. The Court granted Thanh's request to extend the discovery deadline to September 17, 2012. ECF No. 47. The Court granted another request by the parties to extend the discovery deadline to permit Thanh to complete Ngo's deposition, and to seek material from internet service providers. Per that Order, discovery was to close no later than March 16, 2013. ECF No. 56.  Thanh filed a number of discovery related motions in December 2012, which Magistrate Judge Day resolved and the Court affirmed on May 10, 2013. The Court then reconsidered its affirmance, and on June 24, 2013 granted Thanh additional discovery. However, such discovery was limited to the subject of a particular tape recording of a conversation between Ngo and a Mrs. Minh Tam Nunez. ECF No. 86; *see also infra* part G. Accordingly, the period of discovery in which Thanh might have discovered these previously unknown broadcast dates closed, at the very latest, by May 10, 2013.  On September 9, 2013, the

December 11, 2005, and December 10, 2006 broadcast dates may not be considered separate causes of action in this lawsuit.

The Court therefore **GRANTS** Ngo's Motion for Summary Judgment as to Thanh's defamation and false light claims as to all purported dates of publication except the following: the original September 2, 2004 broadcast (both as to defamation and false light claims),  the December 23, 2004 broadcast (false light claim only), and the December 23, 2005 broadcast (false light claim only). However, summary judgment analysis as to these claims does not end here.

## E.

Ngo has also argued she is entitled to summary judgment as to all claims on the ground that there is no genuine issue of material fact that she spoke any words, much less defamatory words, in any of the VPR broadcasts at issue, or that she ever directed anyone else to speak such words.

In order to properly plead a defamation claim under Maryland law, a plaintiff must allege specific facts establishing four elements: (1) that the defendant made a defamatory statement to a

---

Court gave Ngo 45 days to file a dispositive motion, ECF No. 89, and Ngo filed the instant Motion for Summary Judgment exactly 45 days later, ECF No. 93. Thanh, for some reason, waited until November 27, 2013—over two months after he had notice that a summary judgment motion was forthcoming, and over six months after the close of an extremely prolonged discovery period—before he moved to amend the Complaint to add the new rebroadcast dates. Thanh waited until this late date despite the fact that as early as September 17, 2012, he had represented to the Court that he planned "to file a motion to amend the Complaint to include what [Thanh] contends are specific additional instances of defamation and false light invasion of privacy." ECF No. 49, at 2. As a result, the Court denied Thanh's Motion to Amend the Complaint in the present docket, but without in any way conceding that the claims were timely or meritorious, granted him leave to file a separate lawsuit alleging any cause of action included in the Motion to Amend that was not already covered in the present lawsuit. ECF No. 105, at 2. As a result, the broadcast dates September 7, 2004, December 11, 2005, April 6, 2006, December 6, 2006, and December 10, 2006 were not added as independent causes of action in the present case. Thanh has, in fact, asserted these claims in a separate lawsuit. *See* Compl. ¶ 29, 73, ECF No. 1, *Thanh v. Ngo*, 14-PJM-448 (D. Md. Feb. 14, 2014).

third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff suffered harm thereby. *Piscatelli v. Van Smith*, 424 Md. 294, 306 (2012). An allegation of false light must meet the same legal standards as an allegation of defamation. *Id.* Accordingly, in order for Thanh's claim to go forward, he must establish a genuine issue of material fact as to whether Ngo made the defamatory statement or was ultimately responsible for the statement being made.

The Court considers, first, whether evidence in the record, *i.e.* tapes, transcripts, documents or affidavits, support the contention that Ngo herself made any of the allegedly defamatory or false light broadcasts.

In its Order following the January 13, 2014 motions hearing, the Court directed counsel for Thanh to provide counsel for Ngo with copies of recordings of <u>any and all</u> radio broadcasts made on and since September 2, 2004 that comprise Thanh's defamation and false light claims in this suit. ECF No. 105, at 2. The Court further ordered counsel for Thanh to provide counsel for Ngo and the Court with a transcript in English of at least one such broadcast. Once these disclosures would be made, the Court ordered Ngo to provide counsel for Thanh and the Court a list of all radio broadcasts that Ngo understood Thanh was positing as causes of action, beginning with the September 2, 2004 broadcast, indicating on her list the date of the alleged publication, stating what Ngo understood to be the defamatory statement she allegedly made, stating the extent to which Ngo was or was not a speaker during said broadcast, and indicating to what extent, if at all, Ngo directed someone else to make the challenged statement. Thanh was granted leave to reply in due course.

On January 29, 2014, counsel for Thanh certified that he had filed copies of tape recordings made by Thanh containing broadcasts made by Ngo "and those working and

cooperating with her on her radio program, most of which are rebroadcasts of her earlier radio shows, together with printed English transcripts of those shows, which were broadcast in the Vietnamese language." ECF No. 106. The Court received four cassette tapes, labeled A, B, C, and D, and four transcripts, also labeled A, B, C, and D. Both the tapes and the transcripts contained labels that purported to correspond to the dates on which the taped shows were broadcast: "A" (September 2, 2004), "B" (December 6, 2005), "C" (December 11, 2005), and "D" (December 10, 2006).[7]

Ngo responded, per the Court's order, by identifying each of the taped broadcasts that Ngo believed to be at issue. ECF No. 107, at 1. Ngo's response is partially reproduced as follows:

| Alleged Date of Broadcast | Allegedly Defamatory Statement | Whether Defendant Was the Speaker | Whether Defendant Directed Anyone to Make the Statement |
|---|---|---|---|
| September 2, 2004 | Thanh acted dishonestly in business affairs, as alleged in paragraph 71 of the Complaint | Defendant was not the speaker | Defendant did not direct anyone else to make the challenged statement |
| December 6, 2005 | Thanh acted dishonestly in business affairs, as alleged in paragraph 71 of the Complaint | Defendant was not the speaker | Defendant did not direct anyone else to make the challenged statement |
| December 11, 2005 | Thanh acted dishonestly in business affairs, as alleged in paragraph 71 of the Complaint | Defendant was not the speaker | Defendant did not direct anyone else to make the challenged statement |
| December 10, 2006 | Thanh acted dishonestly in business affairs, as alleged in paragraph 71 of the Complaint | Defendant was not the speaker | Defendant did not direct anyone else to make the challenged statement |

---

[7] To the Court's knowledge, the transcripts that Thanh submitted to the Court on January 29, 2014 were never docketed on the electronic case filing system. Accordingly, the Court has docketed the transcripts at ECF Nos. 146; 146-1; 146-2; 146-3.

In an affidavit attached to her Response, Ngo stated that she had listened to the September 2, 2004 audio recording and had reviewed the transcript provided by Thanh. Ngo stated that her voice is not heard at any point on the recording and that the transcript does not attribute any statement to her. ECF No. 107-1, at 1.

The Court pauses to note that Thanh, in his Reply, did not take issue with Ngo's designation of the above four dates as the dates that comprise Thanh's defamation and false light claims in this suit, and Thanh has not disputed this since. The Court therefore finds that, as a result, Thanh effectively abandoned his false light claims as to the December 23, 2004 and December 23, 2005 broadcasts.

The Court has already ruled that the December 6, 2005, December 11, 2005, and December 10, 2006 claims are out of the case because they were not timely or adequately pleaded. Accordingly, there remains but one allegedly defamatory/false light broadcast: the September 2, 2004 broadcast. But as it happens, the tapes and transcripts of these December 6, 2005, December 11, 2005, and December 10, 2006 broadcast dates remain relevant insofar as they shed light on the content and circumstances of the September 2, 2004 broadcast.

Turning to the four broadcast tapes that Thanh and his counsel produced pursuant to Court order, the Court observes that Thanh specifically represented that "[i]f one listens to any full recording of any of the repetitive broadcasts of the defendant they are always prefaced with a phrase that is not included in the transcripts that the defendant has submitted." [8] That

---

[8] In his Reply, Thanh also alleged that listeners to the "show would often hear the voice of Hien Thi Ngo, the defendant, as the show's host come in and announce a reading." ECF No. 109, at 3. As an example, Thanh cited a transcript of the December 6, 2005 broadcast. Thanh alleged that "the defendant's voice is transcribed as coming in and saying: 'Dear Listeners, Due to the time limit, we also ask Mr. Thanh Tin to read Mr. Tam Le's reply letter to Mr. Thanh Hoai. Please go ahead, Mr. Thanh Tin.'" ECF No. 109, at 3-4, citing ECF 109-1, at 16. Thanh has offered no other examples of Ngo announcing a reading. Ngo moved to file a sur-reply. ECF No. 110.  In it, Ngo pointed out that Thanh, in his Reply, cited to a transcript of the December 6, 2005 broadcast

introductory statement identifies the name of Ngo's charity ("Committee Religious Freedom for Vietnam" or "CRFV"), its address, phone number, and email address. ECF No. 109, at 8.

In fact, in numerous pleadings, Thanh has alleged that the introductory statement identifying Ngo's charity "always" prefaced broadcasts of Ngo's radio show, including the broadcasts purportedly contained on the tapes submitted by Thanh to the Court. ECF No. 109, at 8; ECF 117-5, at 9; ECF 119, at 19.[9] In marked contrast, counsel for Ngo has consistently maintained that, with a single exception discussed below, Ngo's voice does <u>not</u> appear on any of

---

that purportedly contains the above-quoted on-air statement that Thanh attributes to Ngo. Ngo represented that this transcript was in fact a new and expanded version of the transcript Thanh submitted to the Court on January 29, 2014. Ngo noted that Thanh offered no explanation as to why this version of the transcript was not filed with the Court on January 29 in conformity with the Court's Order. That same day, Thanh submitted what the Court will construe as a Response to Ngo's Motion to File a Sur-Reply. ECF No. 111. This Response offered an explanation for the new transcript: that, as a result of hospitalizations and illness around the time the January 29, 2014 transcript filings were made, Thanh—who was apparently rendering the interpretations and transcriptions himself—"was unable to complete the English transcriptions as fully as he intended." ECF No. 111, at 1. The Court granted Ngo leave to file a further sur-reply. ECF No. 112.  In his further sur-reply, Ngo pointed out that in no affidavit submitted by Thanh does any person identify Ngo as the speaker who invites Tranh Tin to speak. Ngo argued that the recording reveals that the speaker is, in fact, a man with a distinctly male voice. ECF No. 114, at 4. Ngo also attached an affidavit denying that she made the statement and identified the speaker as a man named Le Thi. ECF No. 114-1, at 3. The Court observes that the transcript to which Thanh points, ECF 109-1, at 16, in no way supports Thanh's assertion. The transcript does not identify the person who invites Tranh Tin to read an letter on air as Ngo, or, for that matter, does not identify the speaker at all. In fact, about a month later, Thanh conceded this point. Buried in an affidavit attached his Motion for Spoliation Sanctions, Thanh admits that "the statement is not heard in the voice of the defendant (my attorney misunderstood that)." ECF No. 117-5, at 10. The Court registers here, as it will at many points throughout, its frustration with Thanh and his counsel for their repeated inability to set forth a complete and accurate record in this case.

[9] According to Thanh, "[t]he <u>actual tapes served</u> contained in Vietnamese, which the defendant fully understands, the full broadcasts, including the supplemental excerpts filed herewith." ECF No. 111, at 1 (emphasis added).  "[O]n <u>every tape submitted</u>, before the re-broadcast begins the voice of the defendant is heard giving the introduction." ECF No. 117-5 at 9-10 (emphasis added). "<u>On the tape</u> of the show of September 2, 2004 of the defendant the voice of the defendant making introductions to readings is heard." ECF No. 119, at 19 (emphasis added). At the second hearing on Ngo's Motion for Summary Judgment, counsel for Thanh stated: "The <u>tapes we have submitted to the Court</u> are [ . . . ] continuous things of her show. In other words, they go from one side to the other without any intervening events with her introducing the show in her voice and then going into the readings . . . ." Tr. 61:11-16, May 28, 2014, ECF No. 142, at 61 (emphasis added).

the tapes. [10] As a result, when the Court convened a second motions hearing in May 2014, the

core issue was whether any of the tapes of the broadcasts in fact contained any introductory

statements about Ngo's charity or any statements in Ngo's voice.

During that hearing, the Court asked counsel for Thanh whether Ngo opened the show on

September 2, 2004 in her own voice. Counsel for Thanh answered in the affirmative. *See* Tr.

61:21-23, May 28, 2014, ECF No. 142, at 61. The Court then asked counsel for Thanh to point to

the portions of the record that supported that assertion. Counsel for Thanh pointed to what he

represented to be a transcript of one of the cassette tapes produced to the Court. The transcript,

however, was <u>not</u> in fact a transcript of the September 2, 2004 cassette tape produced to the

Court, a fact that counsel for Thanh failed to make clear at the time. Moreover, the portion of the

transcript to which counsel for Thanh pointed was <u>not</u> an introduction to one of the challenged

broadcasts, another fact that counsel for Thanh failed to make clear to the Court. Nevertheless,

counsel for Thanh continued to maintain that Ngo's voice appeared on this transcript, and that

she purportedly announced articles to be read on the show, and asked readers to read the articles

on the show. *See* Tr. 62:11-16, May 28, 2014, ECF No. 142, at 62.

Counsel for Thanh represented to the Court that Side A and Side B of Cassette "B"

contained one continuous recording of the December 6, 2005 broadcast. *See* Tr. 61:10-17, May

---

[10] Ngo has pointed out that none of the transcripts furnished by Thanh pursuant to the Court's order contain any introductory statement regarding Ngo's charity nor any statement in Ngo's voice. ECF No. 114, at 5. The Court's review of the transcripts confirms this. In an affidavit, Ngo also states that her voice is not heard on any of the four audio recordings of the shows from which the transcripts were made. ECF No. 114-1, at 4. In a later filing, Thanh attached a document that recites the introductory statement that identifies Ngo's charity. ECF No. 111-2. Thanh asserts that this document "is the brief introduction broadcast in the voice of the defendant before all of her radio shows." ECF No. 111, at 2. This document does not contain any text other than the introductory statement. It does not indicate that it is in fact a transcription of any broadcast, nor does it indicate any specific dates on which the introductory statement was purportedly made. Rather, the Response contains only a bare assertion by Thanh's counsel that the statement was played "before all of her radio shows." ECF No. 111, at 2.

28, 2014, ECF No. 142, at 62. Side A contained Ngo's voice announcing articles to be read on the show, and asked a reader to read said articles on the show. Side B contained readers reading the allegedly defamatory statements. Taken together, counsel for Thanh argued, Side A and Side B of Cassette "B" proved that Ngo directed the broadcasts that contained the allegedly defamatory statement.

Counsel for Ngo immediately pointed out that the transcript to which counsel for Thanh referred had only been produced to counsel for Ngo the day before the hearing, even though the transcript was purportedly made from a tape labelled Cassette "B", which had been submitted to the Court on January 29, 2014. But Cassette "B," it turned out, had recorded material on two sides, designated as Side A and Side B. Side B of the cassette had the handwritten date "12-06-05" on it. While Thanh had previously produced a transcript of Side B, which he asserted was broadcast on December 6, 2005, it is true that he only produced a transcript of Side A the day before the hearing. Moreover, counsel for Ngo vigorously disputed that Side A of Cassette "B" had anything to do with Side B of Cassette "B". Indeed, in her initial response to Thanh's January 29, 2014 production of cassettes and transcripts, Ngo had spotted an important discrepancy between sides A and B. Ngo pointed out that Side A of Cassette "B" contained material that Thanh had not transcribed. Ngo had in fact submitted briefing and an affidavit explaining the irrelevance of Side A. ECF No. 107, at 2-3; ECF No. 107-1, at 2-3. Specifically, while Ngo admitted that her voice appeared on Side A of the cassette, she argued that her voice on Side A was from a program completely unrelated to the program on Side B, which contained the allegedly defamatory/false light statements of December 6, 2005 and which Thanh alleged were made on Ngo's show. Ngo pointed out that the Side A program—on which Ngo admits her voice appeared—promoted an event that was to occur in April 2002. Accordingly, Ngo

maintained that there would have been no reason to re-broadcast that show after 2002, or make mention of an upcoming 2002 event in a broadcast supposedly originating in 2004 and/or rebroadcast in 2005.

At the hearing before the Court, counsel for Ngo repeated these arguments. Counsel for Thanh, not surprisingly, disagreed with Ngo's explanation. In an effort to resolve this dispute, the Court deferred ruling yet again on Ngo's Motion for Summary Judgment, and ordered the parties to locate an impartial, court-certified translator, and arrange for a written translation of appropriate portions of both sides of the tape marked December 6, 2005 (Cassette "B") from Vietnamese to English. ECF No. 121.

Ngo enlisted two such interpreters: Ai Vo and Minh Nguyen. ECF No. 139-1, 139-2. The affidavit and translation subsequently provided by Ai Vo plainly supported Ngo's argument that the portion of Side A containing Ngo's voice was unrelated to the recorded program containing the allegedly defamatory statements on Side B. To that extent, Cassette "B" did not raise a genuine dispute of material fact that Ngo personally made statements or otherwise directed that statements be made on the December 6, 2005 tape.

In an effort to finally establish whether or not her voice appeared on any of the shows containing the allegedly defamatory/false light statement, Ngo also asked the impartial translators to listen to two of the tapes that Thanh had submitted and to submit sworn affidavits regarding their contents. Ai Vo listened to the entire Side B of Cassette "B", which purportedly contained the December 6, 2005 broadcast, and concluded that there was no reference to Ngo or her charity on Side B of Cassette "B". ECF No. 139-1, at 2. Ngo's second translator, Minh Nguyen, listened to the entire Cassette "A," which purportedly contained the September 2, 2004 broadcast, and also concluded that there was no statement concerning Ngo's charity, no

introduction or any other statement identified as that of Ngo, and that the only female voice on the recording was a person identified as Hong Hanh. ECF No. 139-2, at 3-4.

In his initial response to these affidavits of the impartial translators, ECF No. 140, Thanh did not refute the essence of Ngo's argument regarding Side A of Cassette "B"; *i.e.*, that Side A of Cassette "B" contained segments of a program different and distinct from Side B, and that it was clearly broadcast in 2002, not December 2005.

But with that, Thanh was forced to scramble to keep his claims alive. After receiving Ngo's briefing and her translators' affidavits, Thanh and his counsel, <u>without notice to Ngo or leave of Court</u>, sought out one of the two neutral translators engaged by Ngo, *viz.* Minh Nguyen, and directed him to listen to three <u>other</u> cassette tapes in Thanh's possession, tapes that Thanh and his counsel represented were purportedly broadcast on September 2, 2004, December 6, 2005, and April 6, 2006. Counsel for Thanh then solicited Minh Ngyuen to issue a second affidavit in which he stated that he had listened to the cassette tape labeled September 2, 2004, and that, within the first minute of the tape, he heard the contact information about Ngo's charity, read by a female voice. The translator said the same was true of the April 6, 2006 tape. ECF No. 140-1, at 2.

Both Ngo and, frankly, the Court were caught entirely by surprise by Thanh and his counsel's undisclosed contact with one of the neutral translators and the submission of a new affidavit by him. As Ngo points out in her Reply, ECF No. 141, neither the September 2, 2004 tape, nor the April 6, 2006 tape that Thanh played for translator Nguyen had <u>ever</u> been produced to Ngo or to the Court. Indeed, Thanh and his counsel took it upon themselves to label the two late-arriving tapes as respectively Cassette "E" (September 2, 2004) and Cassette "A1" (April 6, 2006). ECF No. 140-1, at 4-5. The four tapes and transcripts produced per the Court's order on

January 29, 2014, it will be remembered, were labeled "A" (September 2, 2004), "B" (December 6, 2005), "C" (December 11, 2005), and "D" (December 10, 2006). And, as previously noted, the independent translators, when engaged by Ngo, listened to Cassette "A" (September 2, 2004) and Side A of Cassette "B" (December 6, 2005), and in their affidavits, both stated that neither recording contained <u>any</u> mention of Ngo's charity at <u>any</u> point. ECF No. 139-1, at 2; ECF No. 139-2, at 3-4. In addition, no transcript of the late-arriving tapes was <u>ever</u> produced to the Court that reflected information about Ngo's charity anywhere within them. Literally out of nowhere Thanh submitted what was a <u>second</u> recording of the September 2, 2004 broadcast (Cassette "E"), which he suddenly maintained contained both Ngo's voice as well as the allegedly defamatory statements.

Such last-minute tactics, to say the least, play havoc with orderly judicial process. Thanh has had more than ample opportunity to create a complete record in this case.

The Court's Order of January 14, 2014 expressly stated that by January 29, 2014, Thanh "SHALL provide to counsel for Ngo and to the Court a recording in Vietnamese and a transcript in English of the alleged December 10, 2006 radio broadcast, and provide to counsel for Ngo recordings <u>of any and all</u> radio broadcasts made on and since September 2, 2004 that comprise Thanh's defamation and false light claims in this suit." ECF No. 105 (emphasis added). Thanh produced four cassettes, "A" (September 2, 2004), "B" (December 6, 2005), "C" (December 11, 2005), and "D" (December 10, 2006), and four corresponding transcripts. Notwithstanding the Court's clear directive and without giving the least notice to Ngo or the Court, and without obtaining the Court's permission, Thanh and his counsel took it upon themselves to supplement and expand the transcript of Side A of Cassette "B" (December 6, 2005). ECF Nos. 109-1; 111.

Then, on the very eve of the May 28, 2014 motions hearing, Thanh and his counsel produced a completely new transcript for Side B of Cassette "B" (December 6, 2005).

Thanh and his counsel have repeatedly represented to the Court that the tapes they have submitted contain an introductory statement with information about Ngo's charity. *See supra* note 9. They have consistently argued that this introductory statement establishes Ngo's liability for the allegedly defamatory/false light statements made on the radio broadcasts that followed. For more than a year, Counsel for Ngo, as well as the Court, have asked Thanh to point out exactly where Ngo's alleged introductory statements can be found on any of the produced tapes or in any of the produced transcripts. Since the Court's January 14, 2014 Order, Thanh and his counsel have submitted over a dozen filings, containing numerous exhibits, affidavits, and memoranda. No Cassette "E" or Cassette "A1", nor any transcript of a Cassette "E" or Cassette "A1", has <u>ever</u> been produced to the Court.[11]

In view of this conduct, and in order to keep some decent semblance of order in the case, the Court declines to consider Thanh's extraordinarily dilatory revelation of the existence of

---

[11] Combing through the record, the Court has discovered that Thanh made reference to the existence of a Cassette "E" on one occasion prior to Thanh's Response Memorandum and accompanying Minh Affidavit at ECF Nos. 140 and 140-1. Buried in an Affidavit by Thanh filed on April 24, 2014 in conjunction with a Supplemental Motion for Spoliation Sanctions and Additional Discovery, Thanh makes reference to "a transcript submitted as 'Tape 'E[,]'' which is a tape of a show of the defendant that was broadcast on September 2, 2004 contains the voice of the defendant, as quoted at the top of the transcript, saying in Vietnamese the introduction [the name and address of Ngo's charity] . . . ." ECF No. 117-5. As the Court has noted, Thanh never produced a Cassette "E" or a transcript of a Cassette "E" to the Court. Prior to Thanh's Response Memorandum at ECF No. 140, Thanh never, to the Court's knowledge, cited to a Cassette "E" or a transcript thereof in any briefing to the Court or at any motions hearing. This is true despite the Court's and Ngo's repeated entreaties to Thanh to produce evidence that Ngo's introductory statement regarding her charity can be found on a tape or in a transcript of a broadcast containing the allegedly defamatory/false light statements at issue. Finally, prior to Thanh's Response Memorandum and accompanying Minh Nguyen second Affidavit at ECF Nos. 140 and 140-1, the Court has found no reference to Cassette "A1" or a cassette or transcript of a show allegedly broadcast on April 6, 2006 anywhere in the Complaint or the record.

Cassette "E" or a Cassette "A1" and their purported contents as specified in the second Minh Nguyen Affidavit.

Accordingly, insofar as tapes are concerned, the record before the Court consists of: a) four tapes of purported broadcasts of a radio show containing allegedly defamatory statements, labelled "A" (September 2, 2004), "B" (December 6, 2005), "C" (December 11, 2005), and "D" (December 10, 2006), with four corresponding transcripts, and no others; and b) two affidavits filed by impartial translators regarding the contents of Cassette "A" (September 2, 2005) and Cassette "B" (Sides A and B) (December 6, 2005) and no others.

On the basis of that record, the Court concludes that the transcripts of all four tapes, by their plain terms, fail to indicate that Ngo's charity was ever mentioned or that Ngo ever spoke on the broadcasts containing the allegedly defamatory/false light statements.

In other words, Thanh has failed to establish a genuine dispute of material fact as to whether Ngo's charity was ever touted on or that Ngo ever spoke any allegedly defamatory/false light statement on a September 2, 2004 broadcast. Ngo is therefore entitled to summary with respect to that aspect of the case.

**F.**

Ngo also asks for summary judgment on the ground that there is no genuine dispute of material fact as to whether she in some way directed or participated in the September 2, 2004 VPR broadcast, such that she could be held liable for broadcasting any allegedly defamatory/false light statements uttered on the show. In opposition, Thanh offers affidavits pertaining to a September 2, 2004 broadcast on which one Le Thi and certain other speakers allegedly made defamatory statements about Thanh. Thanh offers these affidavits to establish that these speakers were speakers only on Ngo's program and no one else's program. By

extension, Thanh argues that he is entitled to a reasonable inference that the presence of Le Thi

and others on the September 2, 2004 broadcast means that the supposedly defamatory/false light

broadcast was directed by Ngo.

At the second motions hearing on Ngo's Motion for Summary Judgment, the Court asked

counsel for Thanh to cite evidence indicating that the allegedly defamatory statements were read

on Ngo's show under her direction. In response, Counsel for Thanh invited the Court's attention

to affidavits from Thanh himself and ten other essentially identical affidavits from Vietnamese-

speaking persons which, he represented, stated that Le Thi (the person who hosted the broadcast

at issue and who allegedly made at least some of the allegedly defamatory/false light statements)

never had his own show on the radio station, but only appeared on Ngo's show. Tr. 51:16-23,

May 28, 2014, ECF No. 142, at 51. The Court directed counsel for Thanh to produce those

witnesses' statements, and specifically asked whether the affiants had _personal_ knowledge, and

the basis for same, of whether Le Thi and other readers were exclusively readers on Ngo's show

or were speakers on someone else's show as well. Counsel for Thanh conceded that the affidavits

did not claim they had personal knowledge of this assertion. _See_ Tr. 60:14-18, May 28, 2014,

ECF No. 142, at 60. The Court noted that, while it was possible that Le Thi and the other

speakers may have appeared on Ngo's show, it was equally possible that they may have also

appeared on other hosts' shows, and equally possible that they made the allegedly

defamatory/false light statements on some other host's shows. Counsel for Thanh requested

leave to file supplemental affidavits clarifying whether Le Thi and the other speakers exclusively

appeared on Ngo's show and on no other show.

The Court granted Thanh's request, and ordered Thanh to provide the "affidavit of one or

more persons with direct, personal knowledge to the effect that the readers alleged to have

spoken on the September 2, 2004 radio broadcast appeared only on [Ngo's] program <u>and no</u> <u>other program</u>, <u>or</u> stating that the affiant heard one or more of the radio broadcasts (specifying which) [ . . . ] alleged to have aired on either September 2, 2004, December 6, 2005, December 11, 2005, or December 10, 2006 and that the broadcast or broadcasts were part of Defendant's show." ECF No. 121, at 2.

Thanh filed nine affidavits in response. ECF Nos. 127-136. One affidavit came from Thanh himself; the remainder came from persons of Vietnamese descent who claimed to be fluent in the Vietnamese language. All nine affidavits—with two exceptions[12]—were identical in content. All state that the affiant regularly listened to Vietnamese Public Radio ("VPR") from 2002 to 2006, and became familiar with Ngo's show, which was broadcast three times a week.

All affiants state that Ngo's show always began with an introductory statement containing contact information for Ngo's charity, read in Ngo's voice. All affiants state that Ngo's show was the only show on VPR during the period in question in which letters from readers as well as articles from Vietnamese language newspapers were read aloud on air. Usually at the beginning of the shows, the affiants state, Ngo would have the readers ask her if they could

---

[12] In Thanh's Affidavit, ECF No. 127, he states that he personally *recorded* tapes broadcasting what he alleges was Ngo's show on the following dates: September 2, 2004, September 4, 2004, December 11, 2005, December 6, 2006, and December 10, 2006. As has become typical of Thanh's filings in this case, this representation appears to be highly questionable, since the record contains no tape or transcript from September <u>4</u>, 2004 or December 6, 20<u>06</u> (there is a produced tape and transcript of December 6, 20<u>05</u>). Indeed, Thanh filed another affidavit two days later, ECF No. 136, in which he admitted that he in fact only recorded the shows broadcast on December 11, 2005 and December 10, 2006. He states that he actually obtained the tape of September 2, 2004 from a Ms. Kim Burke, and that he obtained the tape of December 6, 2005 from a Mr. Giap Phuc Toan. The four tapes to which Thanh refers in his second affidavit correspond to the dates of tapes he produced to the Court on January 29, 2014, and correspond to the dates of tapes which each affiant in ECF Nos. 127-136 claims to have listened to. In Kim Burke's affidavit, ECF No. 128, she states that she personally recorded tapes that contain what she alleges is Ngo's show on the following dates: September 2, 2004, and September 4, 2004. As previously noted, no tape or transcript from September 4, 2004 has been produced. No other affiant claims to have recorded any of the broadcasts at issue.

read the article on the air, and Ngo would verbally give them her permission to do so. All affiants state that they came to know the readers on Ngo's show by the names they used on air, including, among others, Le Thi and Hong Hanh, and that these readers did not read on other shows. All affiants state in particular, albeit state without establishing the basis for their knowledge, that Le Thi was a reader only on Ngo's show, and that he never had his own show on VPR or a reading role on any other show.

All affiants state that they listened to the tapes in the possession of Thanh that, the affiants allege, were recordings of Ngo's shows broadcast on September 2, 2004, December 6, 2005, December 11, 2005, and December 10, 2006. All affiants state that they recognized what was being said on the tapes as material that they had heard on Ngo's show —specifically, material read by readers who did not read on any show on VPR other than Ngo's show. One of these readers, the affiants stated, was Le Thi. The affidavits then go on to provide what they allege to be a translation of various statements contained on the tape, which they say defame Thanh.

The Court pauses to note what the affidavits do <u>not</u> contain. First, none of the affiants other than Thanh actually claims to have actually heard the original broadcast of what they allege to be Ngo's show on any of the four specific dates in issue in this suit. [13] Instead, they claim to

---

[13] In his affidavit discussed *supra*, Thanh himself does not allege that he *heard* the original September 2, 2004 broadcast of the show. *See* ECF No. 127. Two days later, in his further affidavit, Thanh states that he in fact did hear the show broadcast September 2, 2004. ECF No. 136. However, this second affidavit does not discuss the contents of what he alleges to be Ngo's shows on the dates in question based on his recollection of the original broadcast. Rather, as in his first affidavit, Thanh refers to the content of the tapes themselves. *See, e.g.*, ECF No. 136, at 3 ("That virtually all of what is on the tapes attacking him [Thanh] that he submitted is the same from tape to tape  . . . ."). Accordingly, the Court concludes that, like the other affiants, to the extent that Thanh makes specific statements about the contents of what he alleges to be Ngo's show on any of the four dates in question, he is making statements based upon his review of tapes in his possession, not his own recollection of what he actually heard said. The same is true of Kim Burke. Although Kim Burke alleges that she personally *recorded* the September 2, 2004

have listened to Ngo's show "often" between 2002 and 2006, and claim to have listened to the recordings in Thanh's possession that Thanh has told them are recordings of Ngo's shows on the dates in question. Accordingly, to the extent that the affiants make specific statements about the contents of what they allege to be Ngo's show on any of the four specific dates before the Court, they are not making statements based on personal knowledge and these statements clearly constitute inadmissible hearsay.

Further, when each affiant discusses what he or she heard while listening to the tapes in possession of Thanh, none specifically claims to have heard on any of the tapes an introductory statement containing contact information with respect to Ngo's charity. Rather, they revert generally to the statement that Ngo's show was "always" introduced by Ngo's voice reading the introductory statement. Accordingly, when each affiant, in the essentially form affidavit, states that he or she "recognized what was being said on the tapes as material she had heard herself on [Ngo's show]", the Court can only conclude as follows: While each affiant purports to identify the shows on the tapes as a typical show of Ngo based upon the participation of Le Thi and other readers and also based upon the content and the format of the show itself, no affiant can say, with respect to the four tapes before the Court, that he or she personally heard Ngo's voice on the tapes, or personally heard an introductory statement on the tapes mentioning contact information for Ngo's charity.

The question for the Court, then, is whether affidavits of this nature, viewed in context of the record as a whole, suffice to create a genuine dispute of material fact as to whether Ngo can

---

broadcast, she does not allege that she *heard* the original broadcast of the show or ever listened to her recording before giving it to Thanh. ECF No. 128. As with all other affiants, she alleges that she listened to the recordings in Thanh's possession that Thanh has told her were recordings of Ngo's shows on the dates in question. The Court concludes that Kim Burke's statements regarding the contents of the broadcasts are therefore based on her review of tapes that Thanh provided her, not on her personal knowledge.

somehow be deemed responsible for the September 2, 2004 broadcast at issue. The Court concludes that they do not.

The alleged participation of Le Thi does not suffice to establish a genuine issue of material fact as to Ngo's potential responsibility for the September 2, 2004 broadcast, for a number of reasons.

First, Thanh's affiants do not claim to have listened to every show broadcast on VPR throughout the entire day, seven days a week, during the periods in question. Accordingly, when the affiants state that they did not hear Le Thi and the other speakers on VPR shows other than Ngo's show, the only possible conclusion is that the affiants do not know whether Le Thi or other speakers may have appeared on other broadcasts at other times.

Second, the only first-hand evidence in the record contradicts Thanh's affiants' bald assertion that a broadcast in which Le Thi participated was, by definition, a broadcast directed by Ngo. Ngo offers an affidavit from her brother, Hung Paul Ngo, the owner and operator of VPR during the relevant time period, who alleges that Le Thi had his own weekly show on VPR on which Le Thi would read the news and other items of interest to the Vietnamese community. ECF No. 114-2, at 1. Hung Paul Ngo also alleges that he listened to the tape provided to Ngo by Thanh that purportedly contains the September 2, 2004 show (Cassette "A"). As evidence of this assertion, Hung Paul Ngo states that the September 2, 2004 recording contains an introduction to the show that Le Thi had on VPR, ECF No. 114-2, at 2, but that Thanh's proffered transcript for the September 2, 2004 show does not contain a transcription of this introduction to Le Thi's show. Although the Court has not received a transcript with the September 2, 2004 broadcast from a translator other than Thanh himself, the Court finds support for Hung Paul Ngo's allegation in the neutral translator's partial transcript of the December 6, 2005 broadcast. Thanh

agrees that the December 6, 2005 broadcast on side B of Cassette "B" was identical to the September 2, 2004 broadcast. *See, e.g.*, ECF No. 111, at 1-2. But the Court's comparison of Thanh's proffered transcript of Side B of the December 6, 2005 show, ECF No. 109-1, at 2, and the neutral translator's transcript of the same, ECF No. 139-1, at 12, tends to confirm Hung Paul Ngo's allegation. According to the neutral translator's transcript of Side B of the December 6, 2005 show, a male announcer opens by saying "This is Reading Newspapers for You program." After a musical interlude, a male speaker states: "Greetings with respect to our listeners from Le Thi, Thanh Tin, and Hong Hanh." ECF No. 139-1, at 12. In stark contrast, Thanh's proffered transcripts of the December 6, 2005 and September 2, 2004 broadcasts totally omit any reference to this introductory language.[14]

---

[14] Thanh argues that Ngo and Hung Ngoc Ngo are committing perjury by asserting that Le Thi had his own show on VPR during this time. Thanh begins by suggesting that Ngo never asserted that Le Thi had his own show during any prior litigation between the parties. *See* ECF No. 117-1, at 20-21. Thanh also points to excerpts of Ngo's deposition, and argues that she never said anything about Le Thi having his own show. *See* ECF No. 117-5, at 7. Finally, Thanh sets forth what he alleges to be a weekly schedule of VPR shows from 2003 to 2006 "translated roughly into English." He argues that no show of Le Thi appears on this schedule. *See id.* at 5-7.

Thanh's arguments are unpersuasive.

Significantly, Thanh does not point to deposition questions posed to (or interrogatories propounded upon) Ngo or Hung Ngoc Ngo regarding the existence or nonexistence of Le Thi's show. In the deposition excerpts provided to the Court, counsel for Thanh asked only whether Ngo knew Le Thi, whether he moved to California, and whether Ngo knew where he was. *See* ECF No. 117-4, at 3-4.

Even so, Thanh asks the Court to infer that because Ngo never mentioned Le Thi's show in prior litigation or in her deposition, Ngo's and Hung Ngoc Ngo's current testimony that Le Thi had a show of his own should be disbelieved, so that it may now be inferred that Le Thi never had a show of his own. In so arguing, Thanh makes what has been called the "antithesis inference" argument that has consistently been rejected by courts. *See, e.g., Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 512 (1984) ("When the testimony of a witness is not believed, the trier of fact may simply disregard it. Normally the discredited testimony is not considered a sufficient basis for drawing a contrary conclusion."); *Moore v. Chesapeake & O. Ry. Co.*, 340 U.S. 573, 576 (1951) ("Nor would the possibility alone that the jury might disbelieve the engineer's version make the case submissible to it."); *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 655 (7th Cir. 2002) ("A plaintiff cannot make his case just by asking the jury to disbelieve the defendant's witnesses[.]").

Finally, Thanh's affiants allege that on Ngo's show, Ngo would "usually" have the readers, including Le Thi, ask her if they could read the article on the air, and Ngo would verbally give them her permission to do so. This allegation is inconsistent with the record evidence regarding the September 2, 2004 broadcast that is before the Court. As discussed previously, there is no indication that Ngo's voice appears anywhere in the recording of the September 2, 2004 broadcast in question, let alone as the host of the show. As Thanh's own transcript of the September 2, 2004 broadcast indicates, no reader appears to ask any host—let alone Ngo—for permission to read any article on air.

Under the circumstances, the Court finds that, whatever the ultimate truth may be, Thanh's assertion that whenever Le Thi appeared on air he was appearing on behalf of Ngo to be unsubstantiated. Thanh, quite simply, has not established a genuine dispute of material fact as to whether Ngo bears any responsibility for the September 2, 2004 broadcast.

Since Thanh has raised no genuine dispute of material fact as to the last remaining claim in this case, *i.e.* that Ngo either spoke on the September 2, 2004 broadcast or that she somehow directed or participated in the statements made by anyone else in the broadcast, Ngo is entitled to summary judgment as to the defamation/false light claims associated with that broadcast as well.

Summary judgment will therefore be entered in favor of Ngo across the board.

---

Finally, as for the purported broadcasting schedule, the Court observes that the station schedule indicates that the show purportedly broadcast at 9:30 PM on Thursday, September 2, 2004—at which time affiant Kim Burke alleges that she recorded the broadcast on Cassette "A", *see* ECF No. 128, at 1—is not Ngo's CRFV show. Rather, the station schedule appears to list a show entitled either "BBC Relays" or "Quizzes for Fun" running from 9PM to 10PM and a show entitled "Quizzes for Fun" running from 10PM to 11PM. Even assuming that this broadcast schedule accurately stated the names of the shows broadcast on VPR in September of 2004, over a year after the schedule was apparently first issued, the Court notes that few of the shows listed in the schedule have titles that include the name of the host of the show. *See, e.g.*, ECF No. 117-5, at 4-5 (listing shows titled "Social Welfare", "Family Happiness", "Viet Communities"). Accordingly, the Court draw no conclusion from the fact that Le Thi's name may not be listed among the show titles.

**G.**

Finally there is the matter of Thanh's First and Supplemental Motions for Spoliation Sanctions.

Thanh's First Motion for Spoliation Sanctions, ECF No. 82, concerns a purported tape recording of a telephone conversation between Ngo and a Minh Tam Nunez (the "Minh Tape"). In late 2012, Thanh filed a Motion to Compel the Production of this tape, which Magistrate Judge Day denied as untimely. ECF Nos. 72, 73. After this Court affirmed Magistrate Judge Day, Thanh filed a Motion for Reconsideration of the Court's Order. ECF No. 79. Thanh argued that while he had first sought production of the tape from Ngo in August 2012, he did not learn that the tape no longer existed until March 2013, and that his delay in seeking a Motion to Compel resulted from his efforts to resolve the matter informally. After he filed the Motion for Reconsideration, but before the Court ruled on it, Thanh filed his first Motion for Spoliation Sanctions. ECF No. 82.

By Order dated July 24, 2014, ECF No. 84, the Court granted Thanh's Motion for Reconsideration, and ordered Ngo and her counsel to either produce the tape or submit affidavits detailing information about it.  The Order stated that if the tape was not produced, Thanh could depose Ngo and Ngo's counsel, and at trial could attempt to demonstrate Ngo's spoliation of the tape. The Court otherwise deferred ruling on Thanh's first Motion for Spoliation, including the matter of what could properly be inferred from the spoliation.

Ngo subsequently filed an affidavit indicating that the Minh Tape no longer existed. In it, she described the substance of the recorded conversation, which occurred in 2001 or 2002. According to Ngo, in the conversation, Minh told Ngo that Thanh owed Minh a substantial debt, and further stated that during an argument between her and Thanh over repayment of the debt,

Thanh called the police and reported that Minh was a trespasser in his home.  Again per Ngo's affidavit, the police arrived, handcuffed Minh, and brought her to the police station. Further, according to Ngo's account, Minh indicated to her that many people in the Vietnamese American community were afraid of Thanh, at least in part because of his tendency to file lawsuits. ECF 88-1, at 1-2. Ngo stated that she referenced the Minh Tape in an article that she published in 2007. After she published that article, she received a phone call from an unknown caller, who told her that it was illegal to record a telephone conversation without consent from the other party. Ngo stated that, as a result of this call, she destroyed the Minh Tape. ECF No. 88-1, at 2-3.

In light of this, Thanh, with Ngo's consent, asked the Court for leave to depose Minh, which the Court granted. ECF No. 91. The deposition took place on October 17, 2013, and a transcript was docketed at ECF No. 95-5. The deposition is notable because in it Minh appears to deny that the events involving the police, as recounted in Ngo's affidavit, ever took place. *See* Minh Dep. Tr. 14:21-15:15, Oct. 17, 2013, ECF No. 95-5, at 15-16.

In Thanh's view, the Minh Tape is relevant to the September 2, 2004 broadcast because, according to Thanh's transcript of the broadcast, a letter reader (not identified as Ngo) recounts Thanh's allegedly heavy-handed dealings with Minh, *i.e.* that Thanh called the police, charging Minh with illegally invading Thanh's home and that, as a result, Minh was handcuffed and detained at the police station. *See* ECF No. 146, at 2. In his Motion for Spoliation—submitted before the Minh deposition—Thanh requested he be entitled to an adverse inference against Ngo to the effect that the Minh Tape never in fact existed, and that the conversation between Minh and Ngo never took place. ECF No. 88-2. Having conducted the Minh deposition, in which Minh in fact apparently contradicted Ngo's account of the conversation, Thanh presumably might also be interested in an inference to the effect that Ngo was lying about what Minh told her.

The Court will assume, *arguendo*, that a negative inference of some sort might flow from these circumstances.[15] The question is what kind of inference and to what extent would it bear on this case.

Setting aside the issues of Ngo's obligation to preserve the tape and whether she had a culpable state of mind, the problem for Thanh, in the case at bar, is the nature of the adverse inference to which he might be entitled. The only possible relevance of the Minh Tape to this case would be if it contained evidence that Ngo herself actually made or was responsible for a defamatory/false light statement having been made about Thanh on the September 2, 2004 broadcast. But the Court has just gone through an extensive analysis showing that no evidence in the record demonstrates that Ngo herself spoke on air or otherwise directed that words be spoken on the September 2, 2004 broadcast. The tape of the Minh conversation regarding what Thanh may or may not have done to her would would simply be irrelevant to this issue. Even apart from this, an inference from a despoiled tape cannot by itself constitute evidence of a prima facie case and Thanh has cited no authority to the contrary. *See Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 77 (S.D.N.Y. 1991) (no adverse inference appropriate where no extrinsic evidence tended to show that the destroyed evidence would have been unfavorable to the spoliator).

Ngo has testified that the Minh Tape contained a recording of a telephone call in 2001 or 2002. Minh, in her deposition, confirmed that Ngo wanted to record their phone call, and that Minh agreed to be recorded. *See* Minh Dep. Tr. 11:5-11, Oct. 17, 2013, ECF No. 95-5. Thanh

---

[15] A party seeking an adverse inference instruction based on the destruction of evidence must establish that (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a "culpable state of mind;" and (3) the evidence that was destroyed or altered was "relevant" to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it. *See Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 219 F.R.D. 93, 101 (D. Md. 2003) (citing *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002)).

has never alleged, however, nor presumably would he have reason to know, that the Minh Tape

contained anything *other* than a recording of a telephone call in 2001 or 2002.[16] Nor has Thanh

alleged that the Minh Tape—which, by Ngo's admission, contains her voice—was *itself* ever

broadcast on air, let alone broadcast during the September 2, 2004 show at issue. Indeed, in

Thanh's transcript of the broadcast, it is a male letter reader (not identified as Ngo or Minh) who

recounts Thanh's allegedly dishonest business dealings with Minh.

No reasonable fact finder could fairly conclude that statements on the destroyed Minh

Tape, insofar as they can be determined, support the claim that on the September 2, 2004

broadcast, Ngo herself spoke at all, or that at her behest someone else made defamatory/false

light statements about Thanh. No adverse inference could be allowed that would permit Thanh to

argue to this effect. Accordingly, the Court finds that the Minh Tape is irrelevant to these

proceedings.

For these reasons, the Court **REAFFIRMS** its denial of Thanh's First Motion for

Spoliation Sanctions, ECF No. 82, which it did by marginal order on March 30, 2015. ECF No.

143.

## H.

Thanh's wide-ranging Supplemental Motion for Spoliation Sanctions against Ngo, ECF

No. 117, came well after discovery closed, having been filed on April 24, 2014. In it, Thanh

---

[16] To the extent that Thanh contends that he is not obligated to demonstrate the relevance of the destroyed tape because the tape has been destroyed, and that he has no way to directly show its relevance, he is incorrect. Some extrinsic evidence of the content of the spoliated evidence is necessary for the trier of fact to be able to determine in what respect and to what extent it would have been detrimental. *See, e.g.*, *Concord Boat Corp. v. Brunswick Corp.*, 1997 WL 33352759, at *7 (E.D. Ark. 1997). As other courts in this district have noted, the burden is on the aggrieved party to establish a reasonable possibility, based on concrete evidence rather than a fertile imagination, that access to the lost material would have produced evidence favorable to his cause. *See Pandora Jewelry, LLC v. Chamilia, LLC*, 2008 WL 4533902, at *9 (D. Md. Sept. 30, 2008) (citing *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 167 F.R.D. 90, 104 (D. Colo. 1996)).

alleged that Ngo destroyed (i) tapes of the shows that Ngo broadcast, (ii) articles that Ngo read on her shows, and (iii) records showing the dates and times that certain shows were broadcast. ECF No. 117, at 1-2. Thanh requested that various adverse inferences be drawn against Ngo on the basis of this alleged spoliation, and for good measure asked for additional targeted discovery. Although styled as a Supplemental Motion for Spoliation Sanctions, this was effectively a separate motion which had nothing to do with the subject matter of his first Motion for Spoliation Sanctions, which related only to the Minh tape and a series of emails allegedly sent by Ngo.

Courts considering the timeliness of spoliation motions have considered a number of factors, including how long after the close of discovery the motion is made, the temporal proximity between a spoliation motion and a motion for summary judgment, whether there was any governing deadline for filing the motion, and the explanation of the moving party. *See Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 506-08 (D. Md. 2009). Spoliation motions should be filed "as soon as reasonably possible after discovery of the facts that underlie the motion [ . . . ] because resolution of spoliation motions are fact intensive." *See id.* at 508. "Courts are justifiably unsympathetic to litigants who, because of inattention, neglect, or purposeful delay aimed at achieving an unwarranted tactical advantage, attempt [ . . . ] use such a motion to try to reopen or prolong discovery beyond the time allotted in the pretrial order." *Id.*

As Thanh notes, he first raised spoliation issues in an April 4, 2013 hearing before Magistrate Judge Day on Thanh's Motions to Compel and to Enforce Discovery Settlement Agreement. *See* Pl.'s Br., ECF No. 117-1, at 19. But as far as the Court can determine, Thanh's Supplemental Motion for Spoliation Sanctions, ECF No. 117, filed after the first hearing on Ngo's Motion for Summary Judgment, *i.e.* on April 24, 2014, was the first time that Thanh has

raised the spoliation issues with respect to sanctions for the destruction of a wide, unspecified range of broadcast tapes, articles, and records of broadcast dates and times. Yet again, the Court fails to understand why Thanh was so tardy in bringing these claims, and Thanh offers no valid explanation for his delay.[17] Indeed, in attempting to make the case that Ngo destroyed or failed to preserve the myriad tapes and documents, Thanh relies almost exclusively upon purportedly incriminating statements that Ngo made in a 2012 deposition. In other words, Thanh relies upon facts known to him some two years before the instant motion for sanctions was filed. In fact, in his Reply Brief Thanh admits that Ngo produced in discovery recordings of some of her radio broadcasts, but Thanh then admits that he and his counsel apparently chose not to listen to these recordings because there were too many of them. *See* ECF No. 119, at 9-10. This explanation is altogether unacceptable. Thanh continually discovers multiple instances of alleged wrongdoing by his adversary but months frequently go by before they are brought to the Court's or Ngo's attention. This in no way comports with the way orderly litigation should proceed. The Court rejects Thanh's Supplemental Motion for Spoliation Sanctions for no other reason than that it is untimely.

The Court **REAFFIRMS** its denial of Thanh's Supplemental Motion for Spoliation Sanctions, ECF No. 117, by marginal order on March 30, 2015, ECF No. 144.

---

[17] Thanh argues that this Supplemental Motion was triggered by a "surprise" regarding Le Thi's show contained in an exhibit to a surreply filed by Ngo on March 19, 2014, ECF No. 114-2, and is therefore timely. *See* ECF No. 119, at 8; *supra* note 14. But Thanh makes no attempt to explain, nor can he explain, exactly what evidence Ngo allegedly spoliated, including whether it had anything to do with whether Ngo spoke or directed that defamatory words be spoken in the September 2, 2004 show.

**I.**

In summary, the Court

1. **REAFFIRMS** its grant of Ngo's Motion for Summary Judgment as to Thanh's
   Malicious Prosecution Claim;

2. **REAFFIRMS** its denial of Thanh's Motion to Alter or Amend the Judgment
   pursuant to Rule 59(e) of the Federal Rules of Civil Procedure;

3. **REAFFIRMS** its denial of Thanh's Motion for Spoliation Sanctions and
   Supplemental Motion for Spoliation Sanctions;

4. **GRANTS** Ngo's Motion for Summary Judgment in all respects;

5. **ENTERS** Final Judgment in favor of Ngo and against Thanh; and

6. **DIRECTS** the Clerk of the Court to close the case.

A separate Order will **ISSUE**.


_____**/s/**_____
                          **PETER J. MESSITTE**
                    **UNITED STATES DISTRICT JUDGE**

**May 8, 2015**